Marji Hanson (5712)
352 South Denver Street, Suite 240
Salt Lake City, Utah 84111
Telephone: (801) 478-0479
Facsimile:  (801) 665-1817
Attorney for Debtors

---

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>ANOPOL, ALLEN P. and<br>ANOPOL, C. BETH<br>               Debtors. | **DEBTORS' MOTION TO APPROVE "SHORT SALE" OF REAL PROPERTY AND REQUEST FOR PAYMENT OF ATTORNEY'S FEES AND COSTS**<br><br>[FILED ELECTRONICALLY]<br>Case No. 10-35735<br>Chapter 13<br>Judge R. Kimball Mosier |

Pursuant to 11 U.S.C. § 363(b)(1) and Fed. R. Bankr. P. 2002 (a),(c) and 6004(a) and (b), the above-referenced Debtors hereby request permission of the Court to sell real property located at 11556 South Equestrian Drive, South Jordan, Utah (the "Property"), consistent with the terms of a short sale agreement with the secured lender and represent as follows:

1. The Debtors filed a petition for relief under Chapter 13 of the United States Bankruptcy Code on November 11, 2010.

2. By Order dated April, 29, 2011, the Court confirmed the Debtors' Chapter 13 Plan which provided for payment of the pre-petition mortgage arrearage to Central Mortgage Company (Central) the lender holding a first trust deed secured by the Property and avoidance of a second trust deed held by secured lender Specialized Loan Servicing (SLS).

3. The Debtors' listed an interest in the Property on Schedules A and D filed with the Court in this case. The scheduled value of the Property as of the petition date was $290,800.00

4. As evidence by the estimated HUD Settlement Statement that is attached hereto as Exhibit "A," the purchase price for the Property is $285,000.00.

5. Sale proceeds shall be distributed as follows:

   a. The Property is subject to a first trust deed held by Central in the approximate principal balance of $363,534.03 as evidenced by Proof of Claim No. 10 filed with the Court. The Property is also subject to a second trust deed in the approximate principal balance of $39,022.72 as evidenced by Proof of Claim No. 4 filed with the Court. Both loans amounts are subject to accruing interest, late fees and legal costs.

   b. Both Central and SLS have agreed to accept an amount less than the claim balances in order to facilitate the sale. Copies of the Short Sale Acceptance Letters are attached hereto as Exhibit "B" and "C" respectively.

   c. The Property may also be subject to unpaid assessments by the Salt Lake County Treasurer which will be paid at closing.

   d. There will be no remaining funds or sale proceeds paid to the Debtors at closing.

6. The Property was listed for sale through the offices of Busy Bee Realty, Trevor Mecham, realtor, and the Debtors represent that the Property is being sold at fair market value.

7. As indicated on Exhibit A, the proceeds of sale will not be sufficient to satisfy the underlying mortgages, but the holder of the first trust deed note has agreed to accept the offer for sale for an amount less than the balances of the loans secured by the first and second trust deeds.  See Short Sale Acceptance letters attached hereto as Exhibit "B" and "C."

8. The sale proceeds will be sufficient to pay accrued real property taxes and reasonable settlement charges, including a total sales commission of approximately $17,100.00 split between the seller and buyer's agents.

9. The buyers, Jarren and Crystal Chamberlain, are disinterested parties and have no relation, either economic or familial, to the Debtors.  See Real Estate Purchase Contract attached hereto as Exhibit "D."

10. The Trustee shall be allowed his statutory commission on any pre-petition mortgage arrearage, taxes or other encumbrances that are paid directly by the closing agent that otherwise would have been paid by the Trustee through the Debtors' Chapter 13 Plan, if any.  The Trustee shall be entitled to immediate payment of such fee based upon the distribution to such creditors.

11. The Debtors have incurred attorney fees and costs in an amount not to exceed $2,000.00 for filing this Motion and requests payment of such fees through the closing agent.

WHEREFORE, based on the foregoing representation, the Debtors request an Order authorizing the sale and approving the terms of the sale Property and for an Order allowing attorney's fees and costs to be paid by the closing agent in an amount not to exceed $2,000.00.

DATED: March 19, 2013.

                                                                                */s/ Marji Hansson*_____
                                                                                Marji Hanson,
                                                                                Attorney for Debtors



A. Settlement Statement
**ESTIMATE**

OMB Approval No. 2502-0265

# Exhibit A

### B. Type of Loan

| 1. ☐ FHA  2. ☐ RHS  3. ☐ Conv. Unins.  4. ☐ VA  5. ☐ Conv. Ins | 6. File Number: 12-290 | 7. Loan Number: | 8. Mortgage Insurance Case Number: |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items Marked 'p.o.c.' were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrower: | E. Name and Address of Seller: | F. Name and Address of Lender: |
|---|---|---|
| Jarren Chamberlain and Crystal Chamberlain | Allan Paul Anopol and C. Beth Anopol<br>11556 South Equestrian Drive<br>South Jordan, Utah, 84095 | TBD |
| G. Property Location: | H. Settlement Agent: | I. Settlement Date: |
| 11556 South Equestrian Drive<br>South Jordan, Utah 84095 | Unity Title, LLC<br>11616 S. State Street, Suite 1506<br>Draper, Utah 84020<br>Phone: 801-203-3695 | May 9, 2013 |
| | Place of Settlement:<br>11616 S. State Street, Suite 1506<br>Draper, Utah 84020 | Disbursement Date:<br>May 10, 2013 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract sales price | | 401. Contract sales price | $285,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | | 403. | |
| **Adjustment for items paid by seller in advance** | | **Adjustment for items paid by seller in advance** | |
| 106. City/town taxes | | 406. City/town taxes to | |
| 107. County taxes | | 407. County taxes to | |
| 108. Assessments | | 408. Assessments to | |
| **120. Gross Amount Due from Borrower** | | **420. Gross Amount Due to Seller** | $285,000.00 |
| **200. Amounts Paid by or in Behalf of Borrower** | | **500. Reductions In Amount Due to Seller** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | | 502. Settlement charges to seller (line 1400) | $19,476.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | $250,847.48 |
| 205. | | 505. Payoff of second mortgage loan | $6,000.00 |
| 206. | | 506. Deposit of earnest money | |
| 209. | | 509. Delinquent City Taxes to South Jordan City | $571.50 |
| **Adjustment for items unpaid by seller** | | **Adjustment for items unpaid by seller** | |
| 210. City/town taxes | | 510. City/town taxes to | |
| 211. County taxes | | 511. County taxes 1/1/2013 to 5/9/2013 | $1,055.02 |
| 212. Assessments | | 512. Assessments to | |
| 213. | | 513. Seller Paid Closing Cost | $7,050.00 |
| 214. | | 514. | |
| **220. Total Paid by/for Borrower** | | **520. Total Reduction Amount Due Seller** | $285,000.00 |
| **300. Cash at Settlement from/to Borrower** | | **600. Cash at Settlement to/from Seller** | |
| 301. Gross amount due from borrower (line 120) | | 601. Gross amount due to seller (line 420) | $285,000.00 |
| 302. Less amount paid by/for borrower (line 220) | | 602. Less total reductions in amount due seller (line 520) | $285,000.00 |
| 303. CASH ( FROM ) ( TO ) BORROWER: | | 603. CASH (☐ TO ) (☐ FROM) SELLER: | $0.00 |

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collecting, reviewing, and reporting the data. This agency may not collect this information, and you are not required to complete this form, unless it displays a current valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.

L. Settlement Charges

| 700. Total Real Estate Broker Fees Based on Purchase Price | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|
| Division of commission (line 700) as follows: | | | |
| 701. $8,550.00 to Busy Bee Realty | | | |
| 702. $8,550.00 to Media One Real Estate | | | |
| 703. Commission paid at settlement | | | $17,100.00 |
| 800. Items Payable in Connection with Loan | | | |
| 801. Our origination charge | (from GFE #1) | | |
| 802. Your credit or charge (points) for the specific interest rate chosen | (from GFE #2) | | |
| 803. Your adjusted origination charges | (from GFE A) | | $0.00 |
| 804. Appraisal fee to: | (from GFE #3) | | |
| 805. Credit report to: | (from GFE #3) | | |
| 806. Tax service to: | (from GFE #3) | | |
| 807. Flood certification to: | (from GFE #3) | | |
| 900. Items Required by Lender to be Paid in Advance | | | |
| 901. Daily interest charges from to @ $/ day | (from GFE #10) | | |
| 902. Mortgage insurance premium for months to | (from GFE #3) | | |
| 903. Homeowner's insurance for years to | (from GFE #11) | | |
| 1000. Reserves Deposited with Lender | | | |
| 1001. Initial deposit for your escrow account | (from GFE #9) | | $0.00 |
| 1002. Homeowner's insurance mos. @ per month $ | | | |
| 1003. Mortgage insurance mos. @ per month $ | | | |
| 1004. Property Taxes mos. @ per month $ | | | |
| 1005. mos. @ per month $ | | | |
| 1006. mos. @ per month $ | | | |
| 1007. Aggregate Adjustment $ | | | |
| 1100. Title Charges | | | |
| 1101. Title services and lender's title insurance | (from GFE #4) | | |
| 1102. Settlement or closing fee to: Unity Title, LLC $350.00 | | | $750.00 |
| 1103. Owner's title insurance to: (Endorsements: $0) | (from GFE #5) | | |
| 1104. Lender's title insurance to:ATGF (Endorsements: 8.1-06, 9-06, 22-06 $55) | | | |
| 1105. Lenders title policy limit $284,000.00 | | | |
| 1106. Owner's title policy limit $285,000.00 | | | |
| 1107. Agent's portion of the total title insurance premium to:Unity Title, LLC $2,256.75 | | | |
| 1108. Underwriter's portion of the total title insurance premium to:ATGF $398.25 | | | |
| 1115. Owners Policy | | | $1,626.00 |
| 1200. Government Recording and Transfer Charges | | | |
| 1201. Government Recording Charges | (from GFE #7) | | $0.00 |
| 1202. Deed $20.00 Mortgage $70.00 Releases $ | | | |
| 1203. Transfer Taxes | (from GFE #8) | | $0.00 |
| 1204. City/County tax/Stamps Deed $ Mortgage $ | | | |
| 1205. State tax/Stamps Deed $ Mortgage $ | | | |
| 1206. | | | |
| 1300. Additional Settlement Charges | | | |
| 1301. Required services that you can shop for | (from GFE #6) | | $0.00 |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | | | $19,476.00 |

Previous editions are obsolete                Page 2 of 3

HUD-1

Monday, March 11, 2013 1:28:43 PM                                Page 3 of 3

# CENTRAL MORTGAGE COMPANY
www.CentralMortgageOnline.com

March 14, 2013

Trevor Mecham
Email / Fax - trevorm73@gmail.com

RE: Loan #: 0501249872
Name: ALLAN ANOPOL
Property Address: 11556 SOUTH EQUESTRIAN DR, SOUTH JORDAN, UT 84095

Trevor Mecham,

Subject to the conditions below, our investor has approved the short sale of $285,000.00 for the above referenced property for buyer Jarren & Crystal Chamberlain:

- Subject to all judgments related to the property being cleared before closing

- Neither the borrower(s) nor any other party is to receive any money from the proceeds of the sale other than the authorized closing costs listed below. The borrower(s) must agree to forfeit their rights to escrowed funds, insurance proceeds or refunds from pre-paid expenses.

- Written confirmation that the net sale proceeds are in escrow/title. Further, the net sale proceeds MUST be received in this office within 24 hours of closing in order to remain in compliance with investor's instructions. Here is the breakdown of the short sale:

| | |
|---|---|
| Gross Sales Price | $285,000.00 |
| Brokers Commissions | $17,100.00 |
| Payoff to the Second | $6,000.00 |
| Closing Costs | $4,815.32 |
| Seller Paid Buyer Closing Costs (-) | $7,050.00 |
| | $250,034.68 |
| Credit (+) | $0.00 |
| Net Proceeds to Central Mortgage | $250,034.68 |

- **WE MUST RECEIVE A COPY OF THE EXECUTED HUD-1 SETTLEMENT STATEMENT,** the <u>original</u> signed Promissory Note (if applicable), and the proceeds from the sale by the end of business **April 4, 2013** additionally please provide the final HUD 1 to me for review at least 48 hours prior to closing. In exchange for the amount of **$250,034.68** we agree to issue a Release of the Mortgage dated **October 30, 2006** in the amount of **$320,000.00,** foregoing all rights to pursue the deficiency.

Exhibit B

**SETTLEMENT AGENT TO FORWARD ANY AND ALL FUNDS HELD BY SETTLEMENT AGENT OR TITLE COMPANY AT CLOSING, THAT ARE LATER FOUND TO BE REFUNDABLE FOR ANY AND ALL REASONS AS VERIFICATION OF TAXES PAID, PADDING FOR INCIDENTALS, REPAIR INVOICES OR BILLS THAT ARE NOT PAYABLE, ETC.**

**YOU MAY NOT INCREASE FEES FROM THE APPROVED HUD TO ABSORB OVERAGES.**

HERE ARE UPDATED WIRING INSTRUCTIONS FOR YOUR CONVENIENCE

BANK NAME: ARVEST BANK
ACCOUNT NAME    CENTRAL MORTGAGE COMPANY
       LITTLE ROCK, AR
Routing Number is:   082900872
Account Number is:   1012304
ATTN: CASHIERING DEPARTMENT
REF:
                0501249872
                ALLAN ANOPOL
                11556 SOUTH EQUESTRIAN DR
                SOUTH JORDAN, UT   84095

For overnight delivery of funds and/or documents, please forward to the following address:

Central Mortgage Company
Attn:   Loss Mitigation, Tina Moore
801 John Barrow, Suite 1
Little Rock, AR   72205

Sincerely,

*Tina Moore*

Tina Moore
Homeowners Assistance Specialist
Phone # 800-366-2132 ext. 4861
Fax #   501-716-5005
Email tmoore@arvest.com

GL2.27 1004787236 02/20/13



THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

02/20/13

ALLAN ANOPOL
11556 S EQUESTRIAN DR
SOUTH JORDAN          UT, 84095


Re:    SLS Loan Number: 1004787236
       Property Address: 11556 SOUTH EQUESTRIAN DR
                         SOUTH JORDAN          UT, 84095



Dear ALLAN ANOPOL,

Specialized Loan Servicing LLC (SLS) has been authorized by the Investor to accept a "Short Sale" in connection with the above referenced property, release the lien secured by its Deed of Trust, and release you from liability under your promissory note, contingent on the fulfillment of the conditions listed below:

1. Return of signed acknowledgement of the approval letter by fax at closing
1. Receipt of the final HUD-1 Settlement Statement by fax at closing


The minimum net proceeds approved of $6000.00 must be received in our office before the close of business on 03/12/13.  In addition to the Minimum Net Proceeds, SLS must receive $0.00 in certified funds from a source designated by you prior to the closing. If any of the above requested documents and information, as well as all requested proceeds are not received in our office by the date given, this approval will be null and void and you will need to contact our office for updated approval.

Exhibit C

If you have not already done so, please send the requested documentation, along with the name of the title company's closing agent and a contact number to SLS at the fax number

8742 Lucent Blvd., Suite 300, Highlands Ranch, Colorado  80129
Direct (800) 268-9706      Fax (303) 895-2513

GL2.27 1004787236 02/20/13

referenced below so that we can make arrangements for direct payment of the proceeds. If you are a customer in bankruptcy, a written approval from your attorney acknowledging acceptance of these terms must be received in order to complete this process.  Please return the approval letter to SLS with your signed documents.

You will NOT receive any proceeds at closing and will waive your rights to any unearned premiums for taxes and/or insurance, any escrow funds and overages for fees associated with this sale or property securing this loan or loans, which includes, but is not limited to attorney's fees, any and all pro-rations and escrow cushion.

Please be advised the acceptance of this short sale transaction is being made in reliance upon the information provided by you the debtor(s) in consideration for a short sale, including any and all financial representations regarding amounts and sources of income, other assets, and debt obligations of you the debtor(s).

At least 24 hours prior to closing, a copy of the final HUD-1 Settlement Statement must be faxed to the attention of the Recovery Department for approval. If you become aware of any changes to the approved terms and the loan cannot close or fund, you should contact this office immediately.

Sincerely,
Specialized Loan Servicing LLC
Recovery Department
800-268-9706
Fax: 303-895-2513

**Bankruptcy Notice** – If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: Please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.  If you have any questions, please contact our Customer Care Center at 800-306-6057.

***PLEASE NOTE** -  As a result of this Short Sale Offer, debt under your Mortgage Note may have/has been forgiven and there may be tax consequences to you.  Please consult your tax advisor.

8742 Lucent Blvd., Suite 300, Highlands Ranch, Colorado  80129
Direct (800) 268-9706      Fax (303) 895-2513

**Utah Association of REALTORS**

# REAL ESTATE PURCHASE CONTRACT



This is a legally binding Real Estate Purchase Contract ("REPC"). Utah law requires real estate licensees to use this form. Buyer and Seller, however, may agree to alter or delete its provisions or to use a different form. If you desire legal or tax advice, consult your attorney or tax advisor.

## OFFER TO PURCHASE AND EARNEST MONEY DEPOSIT

On this __3-6-13__ ("Offer Reference Date") __Jarren & Crystal Chamberlain__ ("Buyer") offers to purchase from __Allan Hoopai__ ("Seller") the Property described below and [ ] delivers to the Buyer's Brokerage with this offer, or [X] agrees to deliver no later than four (4) calendar days after Acceptance (as defined in Section 23), Earnest Money in the amount of $ __1,000.00__ in the form of __Check__. After Acceptance of the REPC by Buyer and Seller, and receipt of the Earnest Money by the Brokerage, the Brokerage shall have four (4) calendar days in which to deposit the Earnest Money into the Brokerage Real Estate Trust Account.

Buyer's Brokerage: __Media One Real Estate__     Phone: __801-204-6000__
Received by: _____   on _____ (Date)
(Signature above acknowledges receipt of Earnest Money)

### OTHER PROVISIONS

1. **PROPERTY:** __11596 J. Equestrian Dr__ _____ also described as: __Tax ID 27-22-427-006__ _____, City of __South Jordan__, County of __Salt Lake__, State of Utah, Zip __84095__ (the "Property"). Any reference below to the term "Property" shall include the Property described above, together with the Included Items and water rights/water shares, if any, referenced in Sections 1.1, 1.2 and 1.4.

   **1.1 Included Items.** Unless excluded herein, this sale includes the following items if presently owned and in place on the Property: plumbing, heating, air conditioning fixtures and equipment; ovens, ranges and hoods; cook tops; dishwashers; ceiling fans; water heaters; light fixtures and bulbs; bathroom fixtures and bathroom mirrors; curtains, draperies, rods, window blinds and shutters; window and door screens; storm doors and windows; awnings; satellite dishes; affixed carpets; automatic garage door openers and accompanying transmitters; security system; fencing and any landscaping.

   **1.2 Other Included Items.** The following items that are presently owned and in place on the Property have been left for the convenience of the parties and are also included in this sale (check applicable box): [ ] washers [ ] dryers [ ] refrigerators [ ] water softeners [ ] microwave ovens [ ] other (specify) _____

   The above checked items shall be conveyed to Buyer under separate bill of sale with warranties as to title.
   **1.3 Excluded Items.** The following items are excluded from this sale: __Washer, dryer, freezer, water softner, refrigerator, Trampoline, Gas grill BBQ, freezer__

   **1.4 Water Service.** The Purchase Price for the Property shall include all water rights/water shares, if any, that are the legal source for Seller's current culinary water service and irrigation water service, if any, to the Property. The water rights/water shares will be conveyed or otherwise transferred to Buyer at Closing by applicable deed or legal instruments. The following water rights/water shares, if applicable, are specifically excluded from this sale: _____

2. **PURCHASE PRICE.** The purchase price for the Property is $ __285,000.00__ Except as provided in this Section, the Purchase Price shall be paid as provided in Sections 2(a) through 2(d) below. Any amounts shown in 2(b) and 2(d) may be adjusted as deemed necessary by Buyer and the Lender.

   $ __1,000.00__  (a) **Earnest Money Deposit.** Under certain conditions described in the REPC, this deposit may become totally non refundable.
   $ __TBD__  (b) **New Loan.** Buyer may apply for mortgage loan financing (the "Loan") on terms acceptable to Buyer: If an FHA/VA loan applies, see attached FHA/VA Loan Addendum.
   $ _____  (c) **Seller Financing** (see attached Seller Financing Addendum)
   $ __TBD__  (d) **Balance of Purchase Price in Cash at Settlement**
   $ __285,000.00__  **PURCHASE PRICE.** Total of lines (a) through (d)

3. **SETTLEMENT AND CLOSING.**
   **3.1 Settlement.** Settlement shall take place no later than the Settlement Deadline referenced in Section 24(d), or as otherwise mutually agreed by Buyer and Seller in writing. "Settlement" shall occur only when all of the following have been

Page 1 of 6    Buyer's Initials __JC CC__ Date __3/6/13__   Seller's Initials __AH__ Date __3-9-2013__

completed: (a) Buyer and Seller have signed and delivered to each other or to the escrow/closing office all documents required by the REPC, by the Lender, by the title insurance and escrow/closing offices, by written escrow instructions (including any split closing instructions, if applicable), or by applicable law; (b) any monies required to be paid by Buyer or Seller under these documents (except for the proceeds of any new loan) have been delivered by Buyer or Seller to the other party, or to the escrow/closing office, in the form of cash, wire transfer, cashier's check, or other form acceptable to the escrow/closing office.

**3.2 Prorations.** All prorations, including, but not limited to, homeowner's association dues, property taxes for the current year, rents, and interest on assumed obligations, if any, shall be made as of the Settlement Deadline referenced in Section 24(d), unless otherwise agreed to in writing by the parties. Such writing could include the settlement statement. The provisions of this Section 3.2 shall survive Closing.

**3.3 Special Assessments.** Any assessments for capital improvements as approved by the HOA (pursuant to HOA governing documents) or as assessed by a municipality or special improvement district, prior to the Settlement Deadline shall be paid for by: [X] **Seller** [ ] **Buyer** [ ] **Split Equally Between Buyer and Seller** [ ] **Other (explain)** _____. The provisions of this Section 3.3 shall survive Closing.

**3.4 Fees/Costs/Payment Obligations.** Unless otherwise agreed to in writing, Seller and Buyer shall each pay one-half (½) of the fee charged by the escrow/closing office for its services in the settlement/closing process. Tenant deposits (including, but not limited to, security deposits, cleaning deposits and prepaid rents) shall be paid or credited by Seller to Buyer at Settlement. Buyer agrees to be responsible for homeowners' association and private and public utility service transfer fees, if any, and all utilities and other services provided to the Property after the Settlement Deadline. The escrow/closing office is authorized and directed to withhold from Seller's proceeds at Closing, sufficient funds to pay off on Seller's behalf all mortgages, trust deeds, judgments, mechanic's liens, tax liens and warrants. The provisions of this Section 3.4 shall survive Closing.

**3.5 Closing.** For purposes of the REPC, "Closing" means that: (a) Settlement has been completed; (b) the proceeds of any new loan have been delivered by the Lender to Seller or to the escrow/closing office; and (c) the applicable Closing documents have been recorded in the office of the county recorder. The actions described in 3.5 (b) and (c) shall be completed within four calendar days after Settlement.

**4. POSSESSION.** Seller shall deliver physical possession of the Property to Buyer as follows: [X] **Upon Closing;** [ ] ___ **Hours after Closing;** [ ] ___ **Calendar Days after Closing.** Any contracted rental of the Property prior to or after Closing, between Buyer and Seller, shall be by separate written agreement. Seller and Buyer shall each be responsible for any insurance coverage each party deems necessary for the Property including any personal property and belongings. Seller agrees to deliver the Property to Buyer in broom-clean condition and free of debris and personal belongings. Any Seller or tenant moving-related damage to the Property shall be repaired at Seller's expense. The provisions of this Section 4 shall survive Closing.

**5. CONFIRMATION OF AGENCY DISCLOSURE.** Buyer and Seller acknowledge prior written receipt of agency disclosure provided by their respective agent that has disclosed the agency relationships confirmed below. At the signing of the REPC:
Seller's Agent ___Tracy Malham___, represents [X] **Seller** [ ] **both Buyer and Seller as a Limited Agent;**
Seller's Brokerage ___Bush Bee Realty___, represents [X] **Seller** [ ] **both Buyer and Seller as a Limited Agent;**
Buyer's Agent ___Iria Thomson___, represents [X] **Buyer** [ ] **both Buyer and Seller as a Limited Agent;**
Buyer's Brokerage <u>Media One Real Estate</u>, represents [X] **Buyer** [ ] **both Buyer and Seller as a Limited Agent.**

**6. TITLE & TITLE INSURANCE.**

**6.1 Title to Property.** Seller represents that Seller has fee title to the Property and will convey marketable title to the Property to Buyer at Closing by general warranty deed. Buyer does agree to accept title to the Property subject to the contents of the Commitment for Title Insurance (the "Commitment") provided by Seller under Section 7, and as reviewed and approved by Buyer under Section 8. Buyer also agrees to accept title to the Property subject to any existing leases, rental and property management agreements affecting the Property not expiring prior to Closing which were provided to Buyer pursuant to Section 7(e). The provisions of this Section 6.1 shall survive Closing.

**6.2 Title Insurance.** At Settlement, Seller agrees to pay for and cause to be issued in favor of Buyer, through the title insurance agency that issued the Commitment (the "Issuing Agent"), the most current version of the *ALTA Homeowner's Policy of Title Insurance* (the "Homeowner's Policy"). If the Homeowner's Policy is not available through the Issuing Agent, Buyer and Seller further agree as follows: (a) Seller agrees to pay for the Homeowner's Policy if available through any other title insurance agency selected by Buyer; (b) if the Homeowner's Policy is not available either through the Issuing Agent or any other title insurance agency, then Seller agrees to pay for, and Buyer agrees to accept, the most current available version of an *ALTA Owner's Policy of Title Insurance* ("Standard Coverage Owner's Policy") available through the Issuing Agent.

**7. SELLER DISCLOSURES.** No later than the Seller Disclosure Deadline referenced in Section 24(a), Seller shall provide to Buyer the following documents in hard copy or electronic format which are collectively referred to as the "Seller Disclosures":

(a) a written Seller property condition disclosure for the Property, completed, signed and dated by Seller as provided in Section 10.3;
(b) a Commitment for Title Insurance as referenced in Section 6;

Page 2 of 6      Buyer's Initials _AC CC_ Date _3/6/13_ Seller's Initials _AA_ Date _3-9-2013_

(c) a copy of any restrictive covenants (CC&R's), rules and regulations affecting the Property;
(d) a copy of the most recent minutes, budget and financial statement for the homeowners' association, if any;
(e) a copy of any lease, rental, and property management agreements affecting the Property not expiring prior to Closing;
(f) evidence of any water rights and/or water shares referenced in Section 1.4;
(g) written notice of any claims and/or conditions known to Seller relating to environmental problems and building or zoning code violations; and
(h) Other (specify) _____

## 8. BUYER'S CONDITIONS OF PURCHASE.
### 8.1 DUE DILIGENCE CONDITION.
Buyer's obligation to purchase the Property: [X] IS [ ] IS NOT conditioned upon Buyer's Due Diligence as defined in this Section 8.1(a) below. This condition is referred to as the "Due Diligence Condition." If checked in the affirmative, Sections 8.1(a) through 8.1(c) apply; otherwise they do not.

   (a) **Due Diligence Items.** Buyer's Due Diligence shall consist of Buyer's review and approval of the contents of the Seller Disclosures referenced in Section 7, and any other tests, evaluations and verifications of the Property deemed necessary or appropriate by Buyer, such as: the physical condition of the Property; the existence of any hazardous substances, environmental issues or geologic conditions; the square footage or acreage of the land and/or improvements; the condition of the roof, walls, and foundation; the condition of the plumbing, electrical, mechanical, heating and air conditioning systems and fixtures; the condition of all appliances; the costs and availability of homeowners' insurance and flood insurance, if applicable; water source, availability and quality; the location of property lines; regulatory use restrictions or violations; fees for services such as HOA dues, municipal services, and utility costs; convicted sex offenders residing in proximity to the Property; and any other matters deemed material to Buyer in making a decision to purchase the Property. Unless otherwise provided in the REPC, all of Buyer's Due Diligence shall be paid for by Buyer and shall be conducted by individuals or entities of Buyer's choice. Seller agrees to cooperate with Buyer's Due Diligence. Buyer agrees to pay for any damage to the Property resulting from any such inspections or tests during the Due Diligence.

   (b) **Buyer's Right to Cancel or Resolve Objections.** If Buyer determines, in Buyer's sole discretion, that the results of the Due Diligence are unacceptable, Buyer may either: (i) no later than the Due Diligence Deadline referenced in Section 24(b), cancel the REPC by providing written notice to Seller, whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller; or (ii) no later than the Due Diligence Deadline referenced in Section 24(b), resolve in writing with Seller any objections Buyer has arising from Buyer's Due Diligence.

   (c) **Failure to Cancel or Resolve Objections.** If Buyer fails to cancel the REPC or fails to resolve in writing any objections Buyer has arising from Buyer's Due Diligence, as provided in Section 8.1(b), Buyer shall be deemed to have waived the Due Diligence Condition.

### 8.2 APPRAISAL CONDITION.
Buyer's obligation to purchase the Property: [X] IS [ ] IS NOT conditioned upon the Property appraising for not less than the Purchase Price. This condition is referred to as the "Appraisal Condition." If checked in the affirmative, Sections 8.2(a) and 8.2(b) apply; otherwise they do not.

   (a) **Buyer's Right to Cancel.** If after completion of an appraisal by a licensed appraiser, Buyer receives written notice from the Lender or the appraiser that the Property has appraised for less than the Purchase Price (a "Notice of Appraised Value"), Buyer may cancel the REPC by providing written notice to Seller (with a copy of the Notice of Appraised Value) no later than the Financing & Appraisal Deadline referenced in Section 24(c); whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller.

   (b) **Failure to Cancel.** If the REPC is not cancelled as provided in this section 8.2, Buyer shall be deemed to have waived the Appraisal Condition.

### 8.3 FINANCING CONDITION.
Buyer's obligation to purchase the property: [X] IS [ ] IS NOT conditioned upon Buyer obtaining the Loan referenced in Section 2(b). This condition is referred to as the "Financing Condition." If checked in the affirmative, Sections 8.3(a) and 8.3(b) apply; otherwise they do not. If the Financing Condition applies, Buyer agrees to work diligently and in good faith to obtain the Loan.

   (a) **Buyer's Right to Cancel Before the Financing & Appraisal Deadline.** If Buyer, in Buyer's sole discretion, is not satisfied with the terms and conditions of the Loan, Buyer may cancel the REPC by providing written notice to Seller no later than the Financing & Appraisal Deadline referenced in Section 24(c); whereupon the Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller.

   (b) **Buyer's Right to Cancel After the Financing & Appraisal Deadline.** If after expiration of the Financing & Appraisal Deadline referenced in Section 24(c), Buyer fails to obtain the Loan, meaning that the proceeds of the Loan have not been delivered by the Lender to Seller or to the escrow/closing office as required under Section 3.5 of the REPC, then Buyer or Seller may cancel the REPC by providing written notice to the other party; whereupon the Earnest Money Deposit, or Deposits, if applicable (see Section 8.4 below), shall be released to Seller without the requirement of further written authorization from Buyer. In the event of such cancellation, Seller agrees to accept as Seller's exclusive remedy, the Earnest Money Deposit, or Deposits, if applicable, as liquidated damages. Buyer and Seller agree that liquidated damages would be difficult and impractical to calculate, and the Earnest Money Deposit, or Deposits, if applicable, is a fair and reasonable estimate of Seller's damages in the event Buyer fails to obtain the Loan.

### 8.4 ADDITIONAL EARNEST MONEY DEPOSIT.
If the REPC has not been previously canceled by Buyer as provided

Page 3 of 6          Buyer's Initials _____ Date _____ Seller's Initials _____ Date 3-9-2013

in Sections 8.1, 8.2 or 8.3(a), then no later than the Due Diligence Deadline referenced in Section 24(b), or the Financing & Appraisal Deadline referenced in Section 24(c), whichever is later, Buyer: [ ] WILL [X] WILL NOT deliver to the Buyer's Brokerage, an Additional Earnest Money Deposit in the amount of $_____. The Earnest Money Deposit and the Additional Earnest Money Deposit, if applicable, are sometimes referred to herein as the "Deposits". The Earnest Money Deposit, or Deposits, if applicable, shall be credited toward the Purchase Price at Closing.

9. **ADDENDA.** There [X] ARE [ ] ARE NOT addenda to the REPC containing additional terms. If there are, the terms of the following addenda are incorporated into the REPC by this reference: [ ] **Addendum No.** _____ [ ] **Seller Financing Addendum** [ ] **FHA/VA Loan Addendum** [ ] **Lead-Based Paint Disclosure & Acknowledgement (in some transactions this disclosure is required by law)** [X] **Other (specify)** _Short Sale, Subject to Sale of Buyer's home_

10. **HOME WARRANTY PLAN / AS-IS CONDITION OF PROPERTY.**
   **10.1 Home Warranty Plan.** A one-year Home Warranty Plan [ ] WILL [X] WILL NOT be included in this transaction. If included, the Home Warranty Plan shall be ordered by [ ] Buyer [ ] Seller and shall be issued by a company selected by [ ] Buyer [ ] Seller. The cost of the Home Warranty Plan shall not exceed $_____ and shall be paid for at Settlement by [ ] Buyer [ ] Seller.
   **10.2 Condition of Property/Buyer Acknowledgements.** Buyer acknowledges and agrees that in reference to the physical condition of the Property: (a) Buyer is purchasing the Property in its "As-Is" condition without expressed or implied warranties of any kind; (b) Buyer shall have, during Buyer's Due Diligence as referenced in Section 8.1, an opportunity to completely inspect and evaluate the condition of the Property; and (c) if based on the Buyer's Due Diligence, Buyer elects to proceed with the purchase of the Property, Buyer is relying wholly on Buyer's own judgment and that of any contractors or inspectors engaged by Buyer to review, evaluate and inspect the Property.
   **10.3 Condition of Property/Seller Acknowledgements.** Seller acknowledges and agrees that in reference to the physical condition of the Property, Seller agrees to: (a) disclose in writing to Buyer defects in the Property known to Seller that materially affect the value of the Property that cannot be discovered by a reasonable inspection by an ordinary prudent Buyer; (b) carefully review, complete, and provide to Buyer a written Seller property condition disclosure as stated in section 7(a); and (c) deliver the Property to Buyer in substantially the same general condition as it was on the date of Acceptance, as defined in Section 23, ordinary wear and tear excepted. The provisions of Sections 10.2 and 10.3 shall survive Closing.

11. **FINAL PRE-SETTLEMENT WALK-THROUGH INSPECTION.**
   **11.1 Walk-Through Inspection.** No earlier than seven (7) calendar days prior to Settlement, and upon reasonable notice and at a reasonable time, Buyer may conduct a final pre-Settlement walk-through inspection of the Property to determine only that the Property is "as represented," meaning that the items referenced in Sections 1.1, 1.2 and 8.1(b)(ii) ("the items") are respectively present, repaired or corrected as agreed. The failure to conduct a walk-through inspection or to claim that an item is not as represented shall not constitute a waiver by Buyer of the right to receive, on the date of possession, the items as represented. If the items are not as represented, Seller agrees to cause all applicable items to be corrected, repaired or replaced (the "Work") prior to the Settlement Deadline referenced in Section 24(d).
   **11.2 Escrow to Complete the Work.** If, as of Settlement, the Work has not been completed, then Buyer and Seller agree to withhold in escrow at Settlement a reasonable amount agreed to by Seller, Buyer (and Lender, if applicable), sufficient to pay for completion of the Work. If the Work is not completed within thirty (30) calendar days after the Settlement Deadline, the amount so escrowed may, subject to Lender's approval, be released to Buyer as liquidated damages for failure to complete the Work. The provisions of this Section 11.2 shall survive Closing.

12. **CHANGES DURING TRANSACTION.** Seller agrees that from the date of Acceptance until the date of Closing, none of the following shall occur without the prior written consent of Buyer: (a) no changes in any leases, rental or property management agreements shall be made; (b) no new lease, rental or property management agreements shall be entered into; (c) no substantial alterations or improvements to the Property shall be made or undertaken; (d) no further financial encumbrances to the Property shall be made, and (e) no changes in the legal title to the Property shall be made.

13. **AUTHORITY OF SIGNERS.** If Buyer or Seller is a corporation, partnership, trust, estate, limited liability company or other entity, the person signing the REPC on its behalf warrants his or her authority to do so and to bind Buyer and Seller.

14. **COMPLETE CONTRACT.** The REPC together with its addenda, any attached exhibits, and Seller Disclosures (collectively referred to as the "REPC"), constitutes the entire contract between the parties and supersedes and replaces any and all prior negotiations, representations, warranties, understandings or contracts between the parties whether verbal or otherwise. The REPC cannot be changed except by written agreement of the parties.

15. **MEDIATION.** Any dispute relating to the REPC arising prior to or after Closing: [ ] **SHALL** [X] **MAY AT THE OPTION OF THE PARTIES** first be submitted to mediation. Mediation is a process in which the parties meet with an impartial person who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. The parties to the dispute must agree before any settlement is binding. The parties will jointly appoint an acceptable mediator and share equally in the cost

Page 4 of 6        Buyer's Initials _____ Date _3/6/13_ Seller's Initials _____ Date _2013_

of such mediation. If mediation fails, the other procedures and remedies available under the REPC shall apply. Nothing in this Section 15 prohibits any party from seeking emergency legal or equitable relief, pending mediation. The provisions of this Section 15 shall survive Closing.

**16. DEFAULT.**
    **16.1 Buyer Default.** If Buyer defaults, Seller may elect one of the following remedies: (a) cancel the REPC and retain the Earnest Money Deposit, or Deposits, if applicable, as liquidated damages; (b) maintain the Earnest Money Deposit, or Deposits, if applicable, in trust and sue Buyer to specifically enforce the REPC; or (c) return the Earnest Money Deposit, or Deposits, if applicable, to Buyer and pursue any other remedies available at law.
    **16.2 Seller Default.** If Seller defaults, Buyer may elect one of the following remedies: (a) cancel the REPC, and in addition to the return of the Earnest Money Deposit, or Deposits, if applicable, Buyer may elect to accept from Seller, as liquidated damages, a sum equal to the Earnest Money Deposit, or Deposits, if applicable; or (b) maintain the Earnest Money Deposit, or Deposits, if applicable, in trust and sue Seller to specifically enforce the REPC; or (c) accept a return of the Earnest Money Deposit, or Deposits, if applicable, and pursue any other remedies available at law. If Buyer elects to accept liquidated damages, Seller agrees to pay the liquidated damages to Buyer upon demand.

**17. ATTORNEY FEES AND COSTS/GOVERNING LAW.** In the event of litigation or binding arbitration to enforce the REPC, the prevailing party shall be entitled to costs and reasonable attorney fees. However, attorney fees shall not be awarded for participation in mediation under Section 15. This contract shall be governed by and construed in accordance with the laws of the State of Utah. The provisions of this Section 17 shall survive Closing.

**18. NOTICES.** Except as provided in Section 23, all notices required under the REPC must be: (a) in writing; (b) signed by the Buyer or Seller giving notice; and (c) received by the Buyer or the Seller, or their respective agent, or by the brokerage firm representing the Buyer or Seller, no later than the applicable date referenced in the REPC.

**19. NO ASSIGNMENT.** The REPC and the rights and obligations of Buyer hereunder, are personal to Buyer. The REPC may not be assigned by Buyer without the prior written consent of Seller. Provided, however, the transfer of Buyer's interest in the REPC to any business entity in which Buyer holds a legal interest, including, but not limited to, a family partnership, family trust, limited liability company, partnership, or corporation (collectively referred to as a "Permissible Transfer"), shall not be treated as an assignment by Buyer that requires Seller's prior written consent. Furthermore, the inclusion of "and/or assigns" or similar language on the line identifying Buyer on the first page of the REPC shall constitute Seller's written consent only to a Permissible Transfer.

**20. INSURANCE & RISK OF LOSS.**
    **20.1 Insurance Coverage.** As of Closing, Buyer shall be responsible to obtain casualty and liability insurance coverage on the Property in amounts acceptable to Buyer and Buyer's Lender, if applicable.
    **20.2 Risk of Loss.** If prior to Closing, any part of the Property is damaged or destroyed by fire, vandalism, flood, earthquake, or act of God, the risk of such loss or damage shall be borne by Seller; provided however, that if the cost of repairing such loss or damage would exceed ten percent (10%) of the Purchase Price referenced in Section 2, either Seller or Buyer may elect to cancel the REPC by providing written notice to the other party, in which instance the Earnest Money Deposit, or Deposits, if applicable, shall be returned to Buyer.

**21. TIME IS OF THE ESSENCE.** Time is of the essence regarding the dates set forth in the REPC. Extensions must be agreed to in writing by all parties. Unless otherwise explicitly stated in the REPC: (a) performance under each Section of the REPC which references a date shall absolutely be required by 5:00 PM Mountain Time on the stated date; and (b) the term "days" and "calendar days" shall mean calendar days and shall be counted beginning on the day following the event which triggers the timing requirement (e.g. Acceptance). Performance dates and times referenced herein shall not be binding upon title companies, lenders, appraisers and others not parties to the REPC, except as otherwise agreed to in writing by such non-party.

**22. ELECTRONIC TRANSMISSION AND COUNTERPARTS.** Electronic transmission (including email and fax) of a signed copy of the REPC, any addenda and counteroffers, and the retransmission of any signed electronic transmission shall be the same as delivery of an original. The REPC and any addenda and counteroffers may be executed in counterparts.

**23. ACCEPTANCE.** "Acceptance" occurs only when all of the following have occurred: (a) Seller or Buyer has signed the offer or counteroffer where noted to indicate acceptance; and (b) Seller or Buyer or their agent has communicated to the other party or to the other party's agent that the offer or counteroffer has been signed as required.

Page 5 of 6    Buyer's Initials _____ Date 3/6/13   Seller's Initials _____ Date 3-9-2013

**24. CONTRACT DEADLINES.** Buyer and Seller agree that the following deadlines shall apply to the REPC:

(a) Seller Disclosure Deadline _____See Short Sale Addendum_____ (Date)
(b) Due Diligence Deadline _____ (Date)
(c) Financing & Appraisal Deadline _____ (Date)
(d) Settlement Deadline _____ (Date)

**25. OFFER AND TIME FOR ACCEPTANCE.** Buyer offers to purchase the Property on the above terms and conditions. If Seller does not accept this offer by: 5:00 [ ] AM [X] PM Mountain Time on 3/7/13 (Date), this offer shall lapse; and the Brokerage shall return any Earnest Money Deposit to Buyer.

_____ 3/6/13           _____ 3/6/13
(Buyer's Signature)      (Offer Date)        (Buyer's Signature)        (Offer Date)

_____  _____  _____  _____
(Buyer's Names) (**PLEASE PRINT**)  (Notice Address)  (Zip Code)  (Phone)

_____  _____  _____  _____
(Buyer's Names) (**PLEASE PRINT**)  (Notice Address)  (Zip Code)  (Phone)


### ACCEPTANCE/COUNTEROFFER/REJECTION

**CHECK ONE:**
[X] **ACCEPTANCE OF OFFER TO PURCHASE:** Seller Accepts the foregoing offer on the terms and conditions specified above.

[ ] **COUNTEROFFER:** Seller presents for Buyer's Acceptance the terms of Buyer's offer subject to the exceptions or modifications as specified in the attached ADDENDUM NO. _____

[ ] **REJECTION:** Seller rejects the foregoing offer.

_Allan Angus_ 3-9-2013 _____  _____  _____  _____
(Seller's Signature)    (Date)    (Time)    (Seller's Signature)    (Date)    (Time)

_____  _____  _____  _____
(Seller's Names) (**PLEASE PRINT**)  (Notice Address)  (Zip Code)  (Phone)

_____  _____  _____  _____
(Seller's Names) (**PLEASE PRINT**)  (Notice Address)  (Zip Code)  (Phone)

THIS FORM APPROVED BY THE UTAH REAL ESTATE COMMISSION AND THE OFFICE OF THE UTAH ATTORNEY GENERAL, EFFECTIVE AUGUST 27, 2008. IT REPLACES AND SUPERSEDES ALL PREVIOUSLY APPROVED VERSIONS OF THIS FORM.

Page 6 of 6          Buyer's Initials ___ Date 3/6/13 Seller's Initials ___ Date 3-9-2013




## SHORT SALE ADDENDUM NO. 1
## TO
## REAL ESTATE PURCHASE CONTRACT

Participating in a Short Sale may have negative legal or tax consequences. If you desire specific legal or tax advice, consult your attorney or tax advisor.

THIS IS AN [X] ADDENDUM [ ] COUNTEROFFER to that REAL ESTATE PURCHASE CONTRACT (the "REPC") with an Offer Reference Date of 03/06/2013 including all prior addenda and counteroffers, between Jarren and Crystal Chamberlain as Buyer, and Owner of Record as Seller, regarding the Property located at 11556 S Equestrian Dr, South Jordan, UT 84095 (the "Property"). The terms of this Addendum are hereby incorporated as part of the REPC, and to the extent the terms of this Addendum modify or conflict with any provisions of the REPC, including all prior addenda and counteroffers, these terms shall control.

1. **ACKNOWLEDGMENT OF SHORT SALE.** This transaction is commonly referred to as a "Short Sale" because the Purchase Price for the Property is less, or "short", of the amount(s) owed to individuals/entities that have a financial interest in the Property (the "Third Parties"). Under the terms of the REPC, the Third Parties are being requested to accept less than what is owed to them. Therefore, Buyer and Seller agree that their respective obligations under the REPC are subject to Third Party Approval as defined in Section 2 below. For purposes of this Addendum, the term "Third Parties" may include, without limitation; institutional lenders, mortgage insurers, bankruptcy trustees, federal, state and local tax authorities, and private parties.

2. **THIRD PARTY APPROVAL.** For purposes of the REPC, "Third Party Approval" shall mean that the Third Parties, Seller, and Buyer have agreed in writing to the terms of a Short Sale as provided in Sections 2.1 through 2.3 below AND the Buyer and Seller have signed and accepted the *Acknowledgement of Third Party Approval Addendum*.

   2.1 **Approval by Third Parties.** The Third Parties have provided written approval of the terms and conditions of the Short Sale, including, if applicable, any modifications to the REPC required by the Third Parties ("Third Party Modifications to the REPC"). The Third Party Modifications to the REPC shall not however, be binding on Buyer or Seller unless they agree to such modifications by signing the *Acknowledgement of Third Party Approval Addendum* as referenced above. Consent may be withheld by Buyer and/or Seller in their sole discretion.

   2.2 **Approval by Seller.** Seller has entered into a separate written agreement with the Third Parties regarding any conditions of approval specifically required of Seller by the Third Parties, including, but not limited to any deficiency rights the Third Parties may retain against Seller, any requirements for a cash payment and/or promissory note from Seller to the Third Parties and any other Short Sale payoff criteria that represent a continuing obligation against Seller (collectively referred to as the "Additional Third Party Requirements"). Seller's consent to the Additional Third Party Requirements may be withheld by Seller, in Seller's sole discretion.

   2.3 **Approval by Buyer.** Buyer has agreed to any Third Party Modifications to the REPC and any Additional Third Party Requirements that require specific approval by the Buyer, by accepting the *Acknowledgement of Third Party Approval Addendum*. Buyer's consent to any Third Party Modifications to the REPC and/or any Additional Third Party Requirements may be withheld by Buyer, in Buyer's sole discretion.

3. **DELIVERY OF REPC TO THIRD PARTIES.** After Acceptance of the REPC by Buyer and Seller (as defined in Section 23 of the REPC) Seller agrees to submit the REPC to the applicable Third Parties, together with any additional documentation required by the Third Parties according to the Third Parties' instructions.

4. **FAILURE TO OBTAIN THIRD PARTY APPROVAL.** Seller and Buyer shall have until 06/07/2013 ("Third Party Approval Deadline") to obtain Third Party Approval as defined in Section 2 inclusive above. If by the Third Party Approval Deadline, Third Party Approval has not been obtained, the REPC shall automatically be deemed cancelled whereupon any Earnest Money Deposit shall be released to Buyer without the requirement of further written authorization from Seller.

5. **EARNEST MONEY DEPOSIT.** Buyer agrees to deliver the Earnest Money Deposit to Buyer's Brokerage (check applicable box): [ ] as required in the first paragraph on page one of the REPC; [X] no later than four (4) calendar days after Third Party Approval as defined in Section 2 above; or [ ] Other (specify)

---

6. **SELLER'S RIGHT TO ACCEPT BACK-UP OFFERS.** Buyer agrees that at any time prior to Third Party Approval as defined in Section 2 above, Seller may: (a) continue to market the Property to other interested buyers; (b) continue to advertise the Property through the MLS showing any MLS status category (the MLS will allow) deemed necessary and appropriate by the Seller and/or

Page 1 of 2     Buyer's Initials CC Date 3/7/13    Seller's Initials JA Date 3-9-2013

the Third Parties; (c) accept additional backup offers for the purchase of the Property ("Backup Contracts") subject to the rights of Buyer under this contract; and (d) Seller may or may not submit any such Backup Contracts to the Third Parties for review.

**7. BUYER & SELLER'S RIGHT TO CANCEL REPC.** Seller and Buyer acknowledge that there will be significant time delays in obtaining any response from the Third Parties to the terms of this proposed Short Sale; and because this is a Short Sale, Seller will need to obtain the highest and best terms for the sale of the Property. During this significant time delay, circumstances may change for both Seller and Buyer. The changes in circumstances may include, but are not limited to: (a) adjustments in available mortgage financing rates and terms; (b) modifications in the financial circumstances of Seller or Buyer; (c) the timing of the transaction may no longer meet Buyer or Seller's needs; (d) Buyer may find another property that better suits Buyer's needs; and (e) Seller may receive additional offers for the purchase of the Property that better address Seller's legal and financial needs. Based on the above, if at any time prior to Third Party Approval, or the Third Party Approval Deadline, whichever occurs first, the Buyer or Seller determines that their circumstances have changed and it is no longer in their best interest to pursue the sale/purchase of the Property, either Buyer or Seller may cancel the REPC by providing written notice to the other party. In such instance, the Earnest Money Deposit, if any, shall be returned to the Buyer without the requirement of further written authorization from Seller. Buyer and Seller acknowledge and agree that this mutual right of cancellation is fair and reasonable to both parties.

**8. CONTRACT DEADLINES.** Unless otherwise agreed to as part of the Third Party Approval, Buyer and Seller agree that the Contract Deadlines in Section 24 of the REPC are as follows:

(a) Seller Disclosure Deadline       7    days after Third Party Approval.

(b) Due Diligence Deadline           14   days after Third Party Approval.

(c) Financing & Appraisal Deadline   21   days after Third Party Approval.

(d) Settlement Deadline              30   days after Third Party Approval.

(e) Buyer and Seller also agree that if any of the dates referenced in this Section 8 above fall on a Saturday, Sunday, or legal holiday, performance shall be required on the next business day.

**ALL OTHER TERMS** of the REPC, including all prior addenda and counteroffers, not modified by this ADDENDUM shall remain the same. [X] Seller [ ] Buyer shall have until 5 : 00 [ ] AM [X] PM Mountain Time March 07, 2013 to accept the terms of this ADDENDUM in accordance with the provisions of Section 23 of the REPC. Unless so accepted, the offer as set forth in the ADDENDUM shall lapse.

_____  3/7/13  5:45          _____  3/7/13  5:45
[X] Buyer [ ] Seller Signature   Date    Time   [X] Buyer [ ] Seller Signature   Date    Time

### ACCEPTANCE/COUNTEROFFER/REJECTION

**CHECK ONE:**
[X] **ACCEPTANCE** of ADDENDUM: [X] Seller [ ] Buyer hereby accepts the terms of this ADDENDUM/COUNTER OFFER.
[ ] **COUNTER OFFER:** [ ] Seller [ ] Buyer presents as a counteroffer the terms of attached ADDENDUM No _____
[ ] **REJECTION:** [ ] Seller [ ] Buyer rejects the foregoing ADDENDUM/COUNTER OFFER.

_____  3-9-2013          _____
[ ] Buyer [X] Seller Signature   Date    Time   [ ] Buyer [ ] Seller Signature   Date    Time

This form is COPYRIGHTED by the UTAH ASSOCIATION OF REALTORS® for use solely by its members. Any unauthorized use, modification, copying or distribution without written consent is prohibited. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION. IF YOU DESIRE SPECIFIC LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

COPYRIGHT© UTAH ASSOCIATION OF REALTORS® – 5.4.05 – REVISED – 9.7.12 – ALL RIGHTS RESERVED        UAR FORM 20